21 F.3d 428
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Mildred LIEBISCH, Plaintiff-Appellant,
v.
Secretary of Health and Human Services, Defendant-Appellee.
 No. 93-3122.
 United States Court of Appeals, Sixth Circuit.
 March 30, 1994.
 
 Before: MERRITT, Chief Judge; MILBURN and SILER, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 This social security disability appeal comes before the Court after the partial denial of benefits by the Administrative Law Judge and the affirmance of that finding by Magistrate Judge Sherman who tried this case by consent. Under the so-called "Grid," the ALJ declared the plaintiff, Mildred Liebisch, disabled as of age 55 but that she was not disabled as of age 50 because she could perform light work. She contends that she is able to do sedentary work only, and thus that she is entitled to disability as of age 50 under the "Grid."
 
 
 2
 The ALJ ruled that Liebisch was not disabled at age 50 based on the testimony of several doctors that she can perform light work and the affidavits and testimony of two vocational experts who provided examples of light jobs that plaintiff could perform. The two issues on appeal are whether the ALJ properly evaluated the conflicting medical evidence and whether the Secretary met the burden of showing that numerous light jobs exist. A sub-issue of the second question is whether the Dictionary of Occupational Titles takes precedence, as a matter of law, over the testimony of a vocational expert concerning the nature of medium, light and sedentary jobs.
 
 I.
 
 3
 Mrs. Liebisch worked for thirty years at the Partridge Meat Packing Company but was laid off in 1982. Her termination was due to the closing of the plant and was not related to any disability. The Secretary found this prior work to be unskilled labor at the medium exertional level.
 
 
 4
 Plaintiff's first assignment of error is that the ALJ's evaluation of the medical evidence was wrong as to the nature of the work she was able to perform. Liebisch claims medical problems with her back, her hands and her feet. She was seen by several doctors, including Drs. Fritzhand, Todd, Sheridan, and Hess. The ALJ adopted Dr. Fritzhand's finding that her residual functional capacity allowed her to do a limited range of light work. Dr. Sheridan, an orthopedist, thought she could do sedentary work only. The plaintiff refers to Dr. Sheridan's opinion that she could sit only 45 minutes at a time and stand for only one hour at a time and that she could only lift up to ten pounds occasionally. Plaintiff argues that this medical evidence requires a finding that she is able to do sedentary work only, thus making her disabled as a matter of law at age 50.
 
 
 5
 The other doctors who examined plaintiff concluded that she could do light work. Dr. Fritzhand testified she could lift 20-25 pounds, stand or walk four to six hours, and sit without any apparent discomfort. Dr. Hess found that her subjective complaints of pain far outweighed the objective medical evidence. Fritzhand reported further that she had a normal gait, good range of motion and no joint abnormalities. Dr. Todd, also an orthopedist, testified similarly that plaintiff could do some light work and that her complaints of pain were inconsistent with the medical evidence. Based on this record, the ALJ found that Liebisch could do a limited range of light work.
 
 
 6
 The decision that the medical evidence did not support plaintiff's claims of disability was bolstered by the fact that she received almost no medical treatment during the relevant periods (1982-89) and that her daily labor was fairly extensive (cooking, cleaning, shopping, etc.). The ALJ also noted that her problems, arthritis and degenerative disk disease, were progressive. This is significant because Dr. Sheridan's sole exam, on which plaintiff heavily relies, was conducted in 1990 two months before her 55th birthday. Given the progressive, degenerative nature of her problems, Sheridan's report, while probative of Liebisch's 1990 condition, is necessarily less accurate regarding her condition between 1985-1989. Here, there is little or "no objective medical evidence of any disabling medical condition to support claimant's complaints of disability" during the relevant period. King v. Secretary of Health and Human Services, 896 F.2d 204, 206 (6th Cir.1990).
 
 
 7
 We review the ALJ's decision only to determine if it is supported by substantial evidence and whether the proper legal standards were applied. Brainard v. Secretary of Health and Human Services, 889 F.2d 679, 681 (6th Cir.1989). Most of the medical data favors the Secretary's findings, and the reliability of Dr. Sheridan's report is somewhat suspect. Thus, the finding that plaintiff can do some light work is supported by the record.
 
 II.
 
 8
 Plaintiff argues in the alternative that, even assuming she can perform some light work, the defendant has not met the burden of showing that any unskilled light jobs exist. Liebisch asserts that all of the jobs listed by the Secretary are either "semi-skilled," or above the light level. The judge accepted the vocational experts' testimony that the listed jobs (e.g., sandwich maker) are both "unskilled" and "light" work. Some of this testimony is arguably in conflict with the Dictionary of Occupational Titles (Dictionary) and the Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles (Selected Dictionary). Liebisch argues that the judge's reliance on the vocational experts over the Dictionary was erroneous as a matter of law.
 
 
 9
 Plaintiff relies on an unpublished Southern District of Ohio case which arguably held that the Dictionary takes precedence over a vocational expert's testimony. Causey v. Bowen, No. C-1-86-050 (S.D.Ohio May 29, 1987). She first asserts that the Causey opinion is binding precedent and must be followed in this case. This contention is without merit. District Court opinions have persuasive value only and are not binding as a matter of law. TMF Tool Co. v. Muller, 913 F.2d 1185, 1191 (7th Cir.1990).
 
 
 10
 The Dictionary and Selected Dictionary contain general descriptions, subject to modification in any given region. Vocational experts often testify about these modifications. While the regulations recognize that the Dictionary is one of several sources of reliable job information of which the Secretary must take administrative notice, no regulation directs that these general reference manuals are binding or conclusive. 20 C.F.R. Secs. 404.1566(d)(1) and 416.966(d)(1). The Selected Dictionary itself warns:
 
 
 11
 The user should be cautious in interpreting the information in this publication. Occupational definitions described ... are composite descriptions of occupations as they may typically occur and may not coincide with a specific job as actually performed in a particular establishment or in a given industry.
 
 
 12
 Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles, at v (1981).
 
 
 13
 This Court has recognized the limitations of these general manuals in previous cases. Carter v. Secretary of Health and Human Services, 834 F.2d 97 (6th Cir.1987). In Carter, the Court found a plaintiff could not perform his job as a food service manager because the claimant testified that he had to regularly lift over 50 pounds. The Court accepted this testimony over the Dictionary, which listed food service manager as being "light work." Id. at 98-99. Carter is an example of specific testimony overriding the general descriptions of the Dictionary. See also De Loatche v. Heckler, 715 F.2d 148, 151 (4th Cir.1983) (holding that the Dictionary is presumptively applicable but that claimant could overcome that presumption). It logically follows that if a claimant's specific testimony can override a general reference manual such as the Dictionary, then an expert's testimony can as well.
 
 
 14
 The vocational experts here listed various jobs as being light or sedentary. "Hand Packager" is cited as a "medium job," for example, in the Selected Dictionary. Experts testified, however, about various "light" and "sedentary" packaging jobs which exist in the Cincinnati area. Similarly, a cashier generally has a specific vocational preparation level of 5, but there was expert testimony that six of seventeen cashier-type jobs in Cincinnati are level 2. Sandwich maker was listed as a level 2, and one vocational expert, Dr. George Parsons, also listed various other light positions, including tray assembler, sandwich wrapper, order clerk and inventory clerk. The ALJ properly relied on this testimony in finding that light jobs exist that plaintiff can perform.
 
 
 15
 In the instant case, the testimony is specific and clear that the vocational experts listed jobs that were actually unskilled, light work, notwithstanding the general descriptions in the Dictionary. When an ALJ chooses to override the presumptions found in general reference manuals, the reasons should be clear, on the record and supported by credible testimony. Here, this was clearly the case.
 
 III.
 
 16
 Plaintiff's third assignment of error is that the court below should have remanded the case for reconsideration due to a separate Ohio class action suit. Day v. Sullivan, 794 F.Supp. 801 (S.D.Ohio 1991). The Day class, on its face, includes all persons denied disability benefits after 1984. In Day, the district court ruled that the Ohio state agency in charge of disability review had made the disability certification process inherently difficult for applicants, causing many to receive inadequate reviews. Because of these deficiencies, Day class members were remanded to the Secretary for rehearing and further review of their cases.
 
 
 17
 First, Mrs. Liebisch was not part of the class action suit in Day. Instead, she brought this suit on her own behalf. Moreover, plaintiff only brought up the issue of remand under Day after the judge rendered his opinion from the bench. In other words, after losing, she wanted the case remanded for another try.
 
 
 18
 The government correctly argues that Mrs. Liebisch is not similar to the Day plaintiffs because that case involved rehearings due to misleading forms and misinformation about the process, among other things. Liebisch has never made any allegations in her case that are similar to the claims in Day. She has pursued her claim on the merits through three ALJ hearings, two successful appeals to the Appeals Council and this appeal to the district court. She has not made any challenge to the procedures, process, forms, etc. that were discussed in Day. Having lost on the merits, she will not be permitted to claim she is a member of the Day class so as to require the process to begin anew.
 
 
 19
 For all of the above stated reasons, the decision of the court below is hereby AFFIRMED in its entirety.